**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1618

EXTRA ENERGY, INCORPORATED,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; THOMAS R. CULBERTSON,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.  (23-0471 BLA)

Argued:  December 11, 2025                                    Decided:  June 23, 2026

Before NIEMEYER, WYNN, and BENJAMIN, Circuit Judges.

Petition for review denied by unpublished opinion.  Judge Benjamin wrote the opinion, in which Judge Niemeyer and Judge Wynn joined.

**ARGUED:** Mark Joseph Grigoraci, ROBINSON & MCELWEE, PLLC, Charleston, West Virginia, for Petitioner.  Samuel Brown Petsonk, PETSONK PLLC, Oak Hill, West Virginia; Michael P. Doyle, Philadelphia, Pennsylvania, for Respondents.  **ON BRIEF:** Seema Nanda, Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer Feldman Jones, Deputy Associate Solicitor, Olgamaris Fernandez, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.  Bren J. Pomponio, MOUNTAIN STATE JUSTICE, Charleston, West Virginia, for Respondent Thomas R. Culbertson.

————————————

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

Thomas Culbertson applied and received benefits for legal pneumoconiosis under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (BLBA). This grant was confirmed by the United States Department of Labor Office of Administrative Law Judges ("ALJ") and affirmed by Benefits Review Board (the "Board"). Extra Energy, Incorporated—the employer responsible for the benefits payments—now appeals these decisions.

On appeal, Extra Energy argues for the first time that the department's regulation 20 C.F.R. § 718.305(b)(2) exceeds the department's statutory authority and is not the best reading of the statute. In administrative cases, like ones under the BLBA, a party must raise an argument first to the ALJ and the Board to preserve them for judicial review. This is known as the exhaustion requirement. There are limited exceptions to this rule, including where raising the issue would have been futile or when an intervening change in law makes the argument newly available. Extra Energy argues that its challenge to the regulation falls within these exceptions because its argument only became viable after the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024). But that decision did not newly enable Extra Energy's argument; it could have challenged the validity of the regulation before the ALJ and the Board even before *Loper Bright*. Because Extra Energy failed to do so, its argument is forfeited, and we deny its petition for review.

I.

Benefits under the BLBA are provided to coal mine workers (or their dependents) who are totally disabled within the meaning of the BLBA. Pneumoconiosis, also called

3

black lung disease or coal workers' pneumoconiosis, is a chronic dust disease of the lungs, including respiratory and pulmonary impairments, arising out of coal mine employment. 30 U.S.C. § 902(b); 20 C.F.R. § 718.201.   A claimant may invoke the rebuttable presumption of total disability due to pneumoconiosis—referred to as the Section 411(c)(4) presumption—by establishing that they worked for 15 or more years in underground coal mines.  30 U.S.C. § 921(c)(4).  Surface mine experience counts towards this presumption if there is a finding that those experiences "were *substantially similar* to conditions in an underground mine."  *Id*. (emphasis added).   The Department of Labor explains that conditions are substantially similar "if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there."  20 C.F.R. § 718.305(b)(2).  The Section 411(c)(4) presumption can be rebutted by the responsible operator establishing that the claimant did not have pneumoconiosis or proving that no part of the claimant's respiratory or pulmonary total disability was caused by his pneumoconiosis.  30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(d).  The coal mine operator that the claimant last worked for at least a year at will be designated as the responsible operator and is liable for the claimant's benefit payments.  20 C.F.R. §§ 725.493–495.

Thomas Culbertson worked in the coal industry for more than three decades, primarily as a heavy equipment operator for both underground and surface mines.

Culbertson filed for and received benefits under the BLBA.  The Department of Labor's Office of Workers' Compensation Programs determined that he had pneumoconiosis which qualified him for this initial award of benefits.  Extra Energy was designated as the responsible operator.  The initial award decision was affirmed by the

4

ALJ. In confirming his grant of benefits, the ALJ identified his employment that counted towards the Section 411(c)(4) presumption: Culbertson worked for five years in an underground mine and 18 years in surface mines operated by Extra Energy or Summit Services, Incorporated, another coal mine operator. The ALJ further determined that these aboveground mines were "substantially similar to underground coal mine employment." J.A. 493.[1] This conclusion qualified Culbertson for a Section 411(c)(4) presumption of legal pneumoconiosis, which the ALJ concluded Extra Energy failed to rebut.

Extra Energy appealed the ALJ's decision to the Board. The Board issued a final decision and order affirming the ALJ's award of benefits to Culbertson.[2] Extra Energy timely appealed the Board's decision. We have jurisdiction over Extra Energy's petition for review under 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a).

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

[2] While the ALJ credits Culbertson with a total of 23 years of qualifying coal mine employment, the Board affirms only the 15 years of qualifying coal mine employment necessary for the presumption. Before the Board and on appeal, Extra Energy contested Culbertson's precise employment dates stating that Culbertson worked for another mine operator, Prime Processing, Incorporated, for three years between 2004 and 2007. As the Board only affirmed the ALJ for qualifying employment from 1994 to 2004, we need not resolve any discrepancies. Extra Energy does not dispute that Culbertson worked for the company from 2007 to when he left the industry in 2012, so whether Extra Energy is the responsible operator is not in dispute. *See* 20 C.F.R. §§ 725.493-495. For his part, Culbertson testified that all three companies—Extra Energy, Summit, and Prime—have the same owners.

5

II.

We review the legal conclusions of the ALJ and the Board de novo. *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252 (4th Cir. 2016). For the ALJ's factual findings, we review for substantial evidence considering "whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015) (quoting *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013)).

III.

Extra Energy argues that 20 C.F.R. § 718.305(b)(2) is inconsistent with statute and exceeds the department's authority. It specifically takes issue with the "substantially similar" standard at (b)(2) arguing that the statute requires an objective comparison between aboveground and underground mines, not just a showing of regular coal mine dust exposure. *See* Appellant's Br. (ECF No. 16) at 25–28[3] (hereinafter, "Opening Br"). Extra Energy did not raise this issue before the ALJ or the Board, so we must first consider whether Extra Energy can bring this challenge for the first time on appeal. We conclude that it cannot.

Generally, a party must raise all issues before the ALJ and the Board to preserve them on appeal. *See Edd Potter Coal Co., Inc. v. Dir., Office of Workers' Comp. Programs,*

---

[3] Page numbers for citations to ECF documents utilize the page numbers in the red header on each document.

6

*U.S. Dep't of Lab.*, 39 F.4th 202, 207 (4th Cir. 2022) ("[T]he Department of Labor's regulations *require* issue exhaustion both before the ALJ and before the Board." (emphasis added)). "Forfeiture results when a party fails to raise an issue at the appropriate time." *Id.* at 206. However, judges have " 'leeway to create exceptions' " or "incorporate standard administrative-law exceptions." *Id.* at 211 (internal quotation marks omitted in second quote) (quoting *Ross v. Blake*, 578 U.S. 632, 642 n.2 (2016)).

This court has recognized the futility and intervening law exceptions to forfeiture. *Id.* at 211–12. The futility exception applies where "the ALJ and the Board are 'powerless to grant the relief requested.' " *Id*. at 211 (quoting *Carr v. Saul*, 593 U.S. 83, 93 (2021)). The intervening law exception applies when an issue " 'was not previously available,' meaning that 'there was strong precedent' that makes the failure to raise [the argument] 'not unreasonable.' " *Id.* (quoting *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605–06 (4th Cir. 1999)). The intervening law exception is for the protection of litigants "who, despite due diligence, fail to prophesy a reversal of established adverse precedent." *United States v. Chittenden*, 896 F.3d 633, 639 (4th Cir. 2018) (quoting *GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 374 (6th Cir. 2007)).

It is undisputed that Extra Energy did not challenge the regulation's validity before the ALJ or the Board. But Extra Energy contends that our decision in *West Virginia CWP Fund v. Bender*, 782 F.3d 129 (4th Cir. 2015), foreclosed any challenge to the regulation before *Loper Bright*, which was issued after Board affirmance. As such, Extra Energy argues that the futility or intervening law exceptions should apply. However, *Bender* did not foreclose Extra Energy's challenge to the regulation. As such, Extra Energy could have

7

brought its challenge before the ALJ and the Board and we hold that neither exception applies.

A.

Extra Energy contends that it could not bring its § 718.305(b)(2) challenge in front of the ALJ or the Board because *Bender* largely affirmed the validity of 20 C.F.R. § 718.305. Appellant's Br. (ECF No. 27) at 8–9 (hereinafter "Reply Br"). But *Bender* analyzed a different department regulation and made no reference to § 718.305(b)(2).

In *Bender*, the court analyzed 20 C.F.R. § 718.305(d)(1) and considered "whether [the] application of the rule-out standard to coal mine operators in a regulation would be a reasonable exercise of agency authority in filling such a gap in the statute." *Bender*, 782 F.3d at 140. The court applied the principles of deference articulated in *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), and determined that the department properly filled a gap in the statute and that "the rule-out standard set forth in Section 718.305(d) is a reasonable exercise of the agency's authority under *Chevron*." *Bender*, 782 F.3d at 139–40, 143.

But notably, *Bender* includes no mention or reference to subsection (b)(2) or the "substantially similar" standard. And while § 718.305(d)(1) may be related to the Section 411(c)(4) presumption, it does not discuss the "substantially similar" standard critical to Extra Energy's challenge. In fact, these are two different department regulations with two entirely separate functions. Section 718.305(d)(1) provides a standard for operators to rebut a presumption. Specifically, the "rule out" standard asks the party opposing entitlement to rebut the presumption by establishing that the miner did not have either legal

8

or clinical pneumoconiosis and that no part of the miner's disability was caused by pneumoconiosis. *See* § 718.305(d)(1). In other words, an operator must " 'rule out any causal relationship between the miner's disability and his coal mine employment by a preponderance of the evidence' to *rebut* the presumption." *Bender*, 782 F.3d at 135 (emphasis added) (quoting *Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 339 (4th Cir. 1996)). In contrast, § 718.305(b)(2) identifies what aboveground work *qualifies* for the Section 411(c)(4) presumption by defining "substantially similar" as regular coal mine dust exposure.

As such, *Bender*'s *Chevron* deference was, at best, predictive but not conclusory as to what the ALJ, the Board, or this court would have decided about the specific validity of § 718.305(b)(2) as different regulations may demand different responses. *Edd Potter*, 39 F.4th at 211 (rejecting the futility exception where it was possible to receive the requested constitutional relief). Thus, Extra Energy's argument that a § 718.305(b)(2) challenge was futile fails.

## B.

Extra Energy also argues that *Loper Bright* created an avenue for judicial review that did not previously exist as it requires federal courts to determine themselves the best reading of the statute, not defer to an agency's interpretation. Reply Br. at 9. Yet, even before *Loper Bright*, parties had the ability to challenge the validity of a regulation if they believed an agency's interpretation of a statute defied the clear and unambiguous statutory language or relied on an impermissible construction of the statute. *See Chevron*, 467 U.S. at 842–43, *overruled by Loper Bright*, 603 U.S. 369; *see also Perez v. Cuccinelli*, 949 F.3d

9

865, 876 (4th Cir. 2020) (before *Loper Bright*, rejecting an agency's interpretation of a statute as "impermissibly intrud[ing] into issues of state domestic relations law").

Extra Energy contends that the department's interpretation of § 718.305(b)(2) exceeded its statutory authority because it only requires a miner to show regular coal mine dust exposure rather than an objective comparison between aboveground and underground mines. *See* Opening Br. at 25–28. This is exactly the type of impermissible construction argument that was always available to Extra Energy. *Chevron*, 467 U.S. at 843. Extra Energy's use of *Bender* underlines that possibility. As described above, the coal mine operators in *Bender* asserted a legal challenge to the validity of a similarly-situated regulation before *Loper Bright*.

We find no reason to allow Extra Energy to "take a second bite of the apple" by reviving the proceedings because "the first is not to their liking." *Edd Potter*, 39 F.4th at 212. As the court has acknowledged, this would accomplish little beyond "disrupt[ing] the ordinary processes of black-lung decision-making." *Id*. Here, *Loper Bright* did not create a new path to challenge the regulation that did not exist before. Therefore, Extra Energy's argument fails.

## IV.

Because Culbertson has satisfied the rebuttable presumption that he is totally disabled due to pneumoconiosis, Extra Energy may only rebut that presumption by "establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his

respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4).

Having reviewed the record in full, we hold that there was substantial evidence to support the ALJ's finding that Extra Energy could not rebut the presumption. *Hobet Mining, LLC*, 783 F.3d at 504.

V.

As we hold that Extra Energy is unable to meet any exception to the exhaustion requirement, it has forfeited its challenge to the validity of 20 C.F.R. § 718.305(b)(2).[4] Additionally, substantial evidence supports the ALJ's finding that Extra Energy did not properly rebut the presumption of total disability due to pneumoconiosis. Accordingly, Extra Energy's petition for review is

*DENIED.*

---

[4] Because we hold that Extra Energy forfeited its challenge to the regulation, we need not consider the merits of its challenge to § 718.305(b)(2).